UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES FLEMING, | ) |
| *Plaintiff* | ) ) ) ) Cause No. 1:19-cv-3708-RLM-DML |
| v. | ) ) |
| DENIS McDONOUGH, Secretary of Veterans Affairs, as Official Head of the Department of Veterans Affairs, | ) ) ) ) ) |
| *Defendant* | ) |

OPINION AND ORDER

Plaintiff Charles Fleming has sued Denis McDonough, Secretary of Veterans Affairs, as Official Head of the Department of Veterans Affairs, for violating his civil rights as protected by the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964. Mr. Fleming is a nurse at the Richard L. Roudebush VA Medical Center in Indianapolis, Indiana, and claims that the VA discriminated against him by paying him less than his similarly situated female colleagues. The VA has moved for summary judgment on both of Mr. Fleming's claims. Mr. Fleming, in turn, has moved to strike the VA's reply brief in support of its motion for summary judgment. For the following reasons, the court denies Mr. Fleming's motion to strike [Doc. No. 50] and grants the VA's motion for summary judgment [Doc. No. 38].

I. Background

The VA uses a tiered system to classify nurses into one of three ranks for pay scale purposes: Nurse I, Nurse II, and Nurse III. Nurse I demarks the bottom of the totem pole and is further divided into sublevels 1, 2, and 3. Nurses are promoted up the ladder—one level at a time—based on their education, nursing experience, and work performance, and are typically up for promotion each year on the anniversary of their hire date. Each step up on the ladder requires nurses to demonstrate a more advanced skillset and holds them to a higher level of responsibility over their work. And all nurses on the same level of the promotion ladder are paid the same.

To be promoted from Nurse I Level 3 to Nurse II, a nurse must either have a Bachelor of Science in Nursing degree (BSN) or a bachelor's degree in an unrelated field and an associate degree in Nursing (ASN). A nurse with neither may only be promoted to Nurse II if the nurse obtains a waiver of the education requirement and satisfies all other requirements.

Mr. Fleming graduated from nursing school in 2007 with an ASN in May 2007 and began working at the VA as a Nurse I Level 1 nurse. He was assigned to the Medical Intensive Care Unit. Becky Hague was his supervisor. After his first work year, Mr. Fleming was promoted to Nurse I Level 2 in July 2008. Over the next year Mr. Fleming started pursuing a BSN, and when it came time to apply for his yearly promotion in 2009, Mr. Fleming didn't provide a written self-assessment (as was common practice for applicants) and the VA didn't promote him to Nurse I Level 3. He appealed his non-promotion within the VA and

attached an abbreviated self-assessment, but the VA didn't change its decision. Mr. Fleming reapplied for a Nurse I Level 3 promotion the next year, attaching a timely self-assessment, and the VA promoted him to Nurse I Level 3 in 2010. He was promoted again on July 31, 2011 to Nurse II, under the same process as the years before.

On August 2, 2011, Mr. Fleming sought Equal Employment Opportunity counseling and told the EEO counselor that four coworkers held the same position as him but were paid more. Two of those four coworkers were men. Mr. Fleming filed a formal complaint on September 23, 2011, raising two claims of gender discrimination. One claim alleged that from 2008 until July 30, 2011, Mr. Fleming was paid at the Nurse I level even though he performed the same job duties as female nurses paid at the Nurse II level. The other claim alleged that from 2008 to June 10, 2011, Mr. Fleming wasn't promoted to the Nurse II level. The EEO officer started an investigation of the pay claim but dismissed the failure-to-promote claim because it wasn't timely. The EEOC Office of Federal Operations affirmed the dismissal of the failure-to-promote claim on March 25, 2015.

On September 20-21, 2016, an Administrative Law Judge held a hearing on Mr. Fleming's pay claim and considered whether it constituted unlawful employment discrimination in violation of either the Title VII or the Equal Pay Act. Mr. Fleming abandoned the failure-to-promote claim at the hearing. Mr. Fleming presented testimony from six female coworkers and testified himself. The ALJ ruled that there was no Equal Pay Act or Title VII violation.

Having now exhausted his administrative remedies, Mr. Fleming filed this suit, bringing Title VII and Equal Pay claims based on the disparate pay between him and his female coworkers. The VA moved for summary judgment on both of those claims, and Mr. Fleming moved to strike the VA's reply brief in support of its motion for summary judgment.

## II. M<small>R</small>. F<small>LEMING</small>'<small>S</small> M<small>OTION TO</small> S<small>TRIKE</small>

Mr. Fleming moves to strike the VA's reply brief in support of its motion for summary judgment for three reasons. First, Mr. Fleming says the VA seeks to have this court rule on a failure to promote claim that Mr. Fleming never made. Second, Mr. Fleming says that the VA bases its reply brief on facts that aren't in evidence. Finally, Mr. Fleming says that the reply has multiple lengthy single-spaced footnotes that have the appearance of attempting to evade the page limitations set by Local Rule 7-1(e)(1). The VA says that Local Rule 56-1(c) entitles it to a reply brief, and that Mr. Fleming's motion to strike merely disputes arguments raised in its reply brief and therefore is more properly characterized as an impermissible surreply.

Motions to strike generally are disfavored at the summary judgment stage. *E.g.* Hardwick v. Ind. Bell Tel. Co., 2018 WL 4620252, at *3 (S.D. Ind. Sept. 26, 2018); S.D. Ind. L. R. 56-1(i) ("The court disfavors collateral motions — such as motions to strike — in the summary judgment process."). The court understands the parameters of Mr. Fleming's claims. And whether the record supports the

VA's reply is something the court can assess in deciding the VA's motion for summary judgment.

The court denies Mr. Fleming's motion to strike [Doc. No. 50].

### III. THE VA'S MOTION FOR SUMMARY JUDGMENT

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by

5

specific factual allegations, that there is a genuine issue of material fact that requires trial" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007). *See also* Fed. R. Civ. P. 56(e)(2).

*A. Equal Pay Act Claim*

"The Equal Pay Act forbids employers from paying different rates to men and women for the same work . . . ." Jaburek v. Foxx, 813 F.3d 626, 632 (7th Cir. 2016) (citing 29 U.S.C. § 206(d)(1)). "To establish a prima facie case of wage discrimination under the [Act], [the plaintiff] must show: '(1) higher wages were paid to a [female] employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d 693, 698 (7th Cir. 2003) (citing Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 685 (7th Cir. 1998)). The VA argues that Mr. Fleming can't establish the second element.

"In determining whether two jobs are equal, the crucial inquiry is 'whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical.'" Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d at 698 (quoting Fallon v. Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989)). "Once a plaintiff establishes a common core of tasks, we ask whether any additional tasks make the jobs substantially different." David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, 846 F.3d 216, 230 (7th Cir. 2017) (internal quotations omitted). "In making this determination, the court 'look[s] to the actual job duties

6

performed by each employee, not to his or her job description or title.'" Id. (citing Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d at 698).

"[T]hree separate elements . . . are to be considered in comparing job duties: skill, effort and responsibility. Each of these elements must be met individually to establish a prima facie case." Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d at 698. "Skill includes consideration of such factors as experience, training, education, and ability." Id. (quoting 29 C.F.R. § 1620.15(a)).

The VA argues that Mr. Fleming can't establish a prima facie case under the Act because he hasn't pointed to any evidence that a female employee was paid more for performing an essentially identical job. If any of Mr. Fleming's proposed comparators were paid more than he was, it was because they were at higher levels on the promotion ladder, and the level of responsibility and job expectations increase the further up the promotion ladder you go.

Mr. Fleming ostensibly responds that, while his proposed female comparators technically held higher-ranking nursing positions than he did, he performed an essentially identical job as them, but was paid less. He controverts the VA's position that the work he and his female comparators performed didn't require the same skill, effort, or responsibility by saying that that is a question of fact, precluding summary judgment.[1] Mr. Fleming doesn't say that female

---

[1] Mr. Fleming cursorily refers to spoliation of evidence, saying that the VA destroyed patient records that would have conclusively shown what work was performed by Mr. Fleming and his comparators. The VA responds that the records were never destroyed, but the VA did object to producing them because they were unduly burdensome to produce and were protected by doctor-patient privilege and/or the Health Insurance Portability and Accountability Act. Mr. Fleming never moved to compel production of

7

comparators at his same promotion level were paid more; he concedes that all nurses of the same promotion level are paid equally.[2]

The problem with Mr. Fleming's argument is that while the question at issue (whether two jobs are essentially identical despite their different titles) might be a question of fact, it doesn't preclude summary judgment in this case. The VA offered plenty of evidence that nurses on different levels of the promotion ladder have different job duties, particularly in skill and responsibility. Mr. Fleming himself testified to this fact, saying:

> [A]s you go from a Nurse I Level 1 to a Nurse I Level 2 and a Nurse I Level 3, they're wanting to see that growth. They're wanting to see that you're applying the -- in your Nurse I Level 1, you're -- you're the student more or less, you know. You're learning. The Nurse I Level 2, okay, your -- your wings are clipped a little bit and you're starting to fly on your own. And the Nurse I Level 3, you're given more autonomy.

Doc. No. 38-5. At least four of Mr. Fleming's witnesses testified to the same effect—that more is expected of nurses at higher levels on the promotion ladder—

---

these records, and he doesn't argue that he is entitled to an inference that these documents would support his claim.

[2] Mr. Fleming also argues that he was strictly held to the BSN requirement when he applied for promotion to Nurse II, but his female comparators were all given waivers from the BSN requirement. He says this illustrates the systemic favoritism shown to female nurses in determining who receives a Nurse II rate of pay. But this argument is more germane to a claim for discriminatory promotional practices than compensational practices. Whether women are favored in being promoted to Nurse II is irrelevant to whether Mr. Fleming has established the second element of a prima facie case under the Act—specifically, whether a nurse at Nurse I Level II preforms essentially the same job as a nurse at Nurse II. *See* Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d at 699 ("Although Dr. Cullen and Dr. Quillen have different educational credentials, the comparison at this juncture is between positions, not individuals.") (citing 4 Joseph G. Cook & John L. Sobieski, Jr., Civil Rights Actions ¶ 20.15[B], at 20–123–24 (2003) (noting that the issue is comparison of jobs, individual qualifications are irrelevant at this point in the analysis)).

at his administrative hearing. The VA notes that all of this testimony is consistent with the VA's Nurse Qualifications Standard, which sets forth the varying standards expected of nurses on different levels of the promotion ladder.

The only evidence Mr. Fleming offers to controvert the VA's is Ms. Hague's evaluations of him reporting that he performed in a way that met or exceeded all expectations of Medical Intensive Care Unit nurses.[3] The quality of Mr. Fleming's job performance doesn't affect whether a nurse at Nurse I Level 2 performs an essentially identical job as a nurse at Nurse II. In other words, whether Mr. Fleming exceeds his job expectations doesn't affect what his job duties are (specifically, what skills he's expected to demonstrate or what level of responsibility he his held to) or whether those job duties are essentially identical to another, better paying job.

Mr. Fleming can't establish a prima facie case under the Act because his job isn't equal to those of his female comparators—the positions don't require equal levels of skill and responsibility. "[E]mployees of higher rank commonly have different job duties or performance standards [than those of lower rank,]" and such is the case here. Rodgers v. White, 657 F.3d 511, 518 (7th Cir. 2011); *see also* Cullen v. Ind. Univ. Bd. of Trs., 338 F.3d at 699 (holding that the positions of Physical Therapy Program Director and Respiratory Therapy Program Director don't require equal levels of skill and responsibility); Donnelly

---

[3] Mr. Fleming's point implies that he was performing at a Nurse II level, but he provides no citation to the record to substantiate that argument. And the court is left in the dark about when Ms. Hague made these comments. *See* United States v. 5443 Suffield Terrace, Skokie, Ill., 607 F.3d 504, 510 (7th Cir. 2010) ("[I]t [isn't] the district court's job to sift through the record and make [the non-movant's] case for him.").

9

v. Ball State Univ., 2020 WL 5760488, at *4-5 (S.D. Ind. Sept. 25, 2020) (holding that the positions of Full Professor and Associate Professor don't require equal levels of skill and responsibility). The VA is entitled to summary judgment on Mr. Fleming's Equal Pay Act claim.

*B. Title VII Claim*

Mr. Fleming's Title VII claim is a disparate pay claim, is analogous to his Equal Pay Act claim, and fails for similar reasons.

"[T]he singular question that matters in a discrimination case is: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" Johnson v. Advocate Health and Hosps. Corp., 892 F.3d 887, 894 (7th Cir. 2018) (quoting Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016)). Mr. Fleming has been very clear that the adverse action in this case isn't a failure to promote him to Nurse II,[4] but instead the denial of a Nurse II rate of pay to Mr. Fleming when he performed the same job as his proposed female comparators.

To present evidence of sex-based discrimination, "a plaintiff may utilize the McDonnell Douglas burden-shifting framework." McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d 360, 368 (7th Cir. 2019) (citations omitted); *see* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under this approach,

---

[4] As he must—Mr. Fleming abandoned any claims based on a failure to promote at the underlying administrative proceeding.

10

the plaintiff must show evidence that (1) [he] is a member of a protected class,[5] (2) [he] was meeting the defendant's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) similarly situated employees who were not members of [his] protected class were treated more favorably." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 719 (7th Cir. 2018). "If the plaintiff meets each element of [his] prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d at 719-720).

The McDonnell Douglas framework isn't the only method a plaintiff may use to prove his claim; it "is merely one way of culling the relevant evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" sex or another proscribed factor. Id. (quoting Johnson v. Advocate Health and Hosps. Corp., 892 F.3d at 894); Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016) (observing that a "prima facie case in Title VII litigation . . . refers to a common, but not exclusive, method of establishing a triable issue of intentional discrimination"). "However the plaintiff chooses to proceed, at the

---

[5] Plaintiffs in this circuit who are members of majority groups must show at least one "background circumstance" to support their discrimination claims. Mills v. Health Care Serv. Corp., 171 F.3d 450, 456-457 (7th Cir. 1999). The court doesn't consider whether Mr. Fleming has satisfied this additional requirement because, regardless of whether he could show the requisite background circumstances, no reasonable juror could find that any pay disparity was the result of Mr. Fleming's sex.

11

summary judgment stage the court must consider all evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse employment action because of [a proscribed factor]." Id. (quoting Skiba v. Illinois Cent. R.R. Co., 884 F.3d at 720). Courts "therefore also assess the evidence 'as a whole, rather than asking whether any particular piece of evidence proves the case by itself.'" Id. (quoting Ortiz v. Werner Enters., Inc., 834 F.3d at 765).

In his statement of claims, Mr. Fleming presented his Title VII claim in terms of the McDonnell Douglas framework. So the court will first determine whether Mr. Fleming has established a prima facie case for his Title VII claim by employing that framework. Then the court will to turn to whether the evidence holistically would permit a reasonable juror to find that the pay disparity Mr. Fleming complains of was assessed because Mr. Fleming is a man.

The VA argues that Mr. Fleming can't satisfy the fourth prong of the McDonnell Douglas framework because he hasn't identified a similarly situated female comparator.

"The similarly-situated requirement . . . is a common-sense flexible inquiry that seeks to determine whether there are enough common features between the individuals to allow a meaningful comparison." Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 831 (7th Cir. 2007). "Although similarly situated employees 'need not be identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" Id. (quoting Patterson v. Indiana Newspapers, Inc., 589 F.3d 357, 365–366 (7th Cir. 2009)). "Relevant factors include 'whether the employees (i) held the same job description, (ii) were subject

12

to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, 846 F.3d at 226 (quoting Warren v. Solo Cup Co., 516 F.3d 627, 631 (7th Cir. 2008)). "[T]his is not a hard and fast test, and there is no magic to these considerations. In the employment discrimination context, the requirement to find a similarly situated comparator is really just the same requirement that any case demands—the requirement to submit relevant evidence." McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d at 369. "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." Id. (citing Johnson v. Advocate Health and Hosps. Corp, 892 F.3d at 895). "Ultimately, plaintiff bears the burden of showing the individuals he identifies are similarly situated." Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 723-724 (7th Cir. 2018).

Mr. Fleming's proposed comparators are Mses. Tosha Roberts, Erin Daniels, Melissa Capien, Janet Espique, Vicki Leffler, and Wendy Breen. All of these women were on higher levels of the promotion ladder than Mr. Fleming when they were paid more than him. And as already discussed, nurses at the VA are held to higher standards the higher up the promotion ladder they go—both in terms of the skillset they are expected maintain and the level of responsibility they are held accountable for. Mr. Fleming hasn't identified any valid comparator

because he hasn't identified a female nurse who was at his level but was nevertheless paid more than him. He hasn't established a prima facie case within the McDonnell Douglas framework.

Mr. Fleming says that nurses Roberts, Daniels, Capien, Espique, and Leffler were shown favoritism because they all received waivers from the BSN requirement when they were promoted to Nurse II, while Mr. Fleming was strictly held to the BSN requirement. Mr. Fleming says this evidence precludes summary judgment (regardless of the McDonnell Douglas framework) because it permits a reasonable juror to find that the pay disparity Mr. Fleming complains of was assessed because he is a man. He notes that the VA seeks to differentiate Mr. Fleming's proposed comparators after the VA promoted them, rather than when they were afforded favorable treatment during their promotions.

But this is a disparate pay claim, not a failure-to-promote claim, and Mr. Fleming's argument sounds in the latter. It's not for this court to decide whether Mr. Fleming wasn't promoted based on his sex, because that wasn't his claim before the EEOC or this court. And Mr. Fleming can't cite favoritism given to female employees during the process of being promoted to higher paying jobs and turn it into a disparate pay claim by citing the difference in pay between the jobs, essentially circumventing his requirement to raise a failure-to-promote claim at the administrative level. Those promotions required a higher skill level and came with more responsibility, circumstances that justify a pay increase and aren't based on sex. Mr. Fleming's favoritism argument is unpersuasive, and

he cites no other evidence that would permit a reasonable juror to conclude that Mr. Fleming was paid less because he is a man.

\* \* \*

The VA is entitled to summary judgment on all of Mr. Fleming's claims.

IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Fleming's motion to strike [Doc. No. 50] and GRANTS the VA's motion for summary judgment [Doc. No. 38]. The court DENIES AS MOOT Mr. Fleming's motion to schedule expedited trial [Doc. No. 58].

SO ORDERED.

ENTERED: December 8, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution:

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov

James D. Masur, II
ROBERT W. YORK & ASSOCIATES
jdmasur@york-law.com